535 A.2d 209

Joseph F. Maloney, Appellant *v.* City of Philadelphia, Appellee.

City of Philadelphia, Appellant *v.* Joseph F. Maloney, Appellee.

Argued September 18, 1987, before Judges COLINS and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Joseph F. Busacca*, for appellant/appellee, Joseph F. Maloney.

*John M. McNally, Jr., Naulty, Scaricamazza & McDevitt*, for appellee/appellant, City of Philadelphia.

OPINION BY JUDGE PALLADINO, December 15, 1987:

The City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County in which the trial court denied the City's motion for judgment notwithstanding the verdict (JNOV). Joseph Maloney (Maloney) appeals from the same order in which the trial court granted the City's motion for a new trial.

Maloney was an employee of Curtis Bedwell, Inc. (Contractor). Contractor had been hired by the City to erect eight sludge digester tanks at its Southwest Water Pollution Control Plant. While working on this job,

Maloney fell and was injured when an improperly secured stringer on the scaffolding he was climbing twisted.[1] Maloney filed suit against the City, alleging that the City's negligence in failing to insure that Contractor properly erected the scaffolding was the cause of his injuries.

The City filed preliminary objections in the nature of a demurrer,[2] claiming it was immune to suit pursuant to 42 Pa. C. S. §8541 because (1) Maloney had failed to state a cause of action and (2) the alleged negligent acts complained of do not fall within any of the eight exceptions to immunity provided in 42 Pa. C. S. §8542(b). The trial court dismissed the preliminary objections.

The case went to trial in October, 1985. The following pertinent facts were undisputed: the scaffolding had been erected by Contractor and was not secured as required; Maloney had participated in erecting the scaffolding from which he fell and knew it was not properly secured; the scaffolding was not owned by the City but was rented by Contractor from another company. The City's manager for the project testified that he had never been informed that the scaffolding was not properly secured and was not aware of any complaints about the scaffolding. The City inspector for the project did not testify.

---

[1] The defect in the scaffolding which caused it to be unsafe, and which caused Maloney's fall, was the lack of a wedge to hold the stringers securely in the U-head. Lack of the wedge allowed the stringer to twist in Maloney's grasp. The wedges had been initially used by Contractor but Contractor's foreman testified that Contractor had ordered their use discontinued in order to speed up the job. N.T. at 2.78-2.79.

[2] The defense of immunity should be raised as new matter in a defendant's answer and new matter pursuant to Pa. R.C.P. No. 1030.

The jury returned a verdict finding the City 90% negligent and Maloney 10% negligent. It found total damages sustained by Maloney to be $1,032,000, which when reduced by 10% and increased by the addition of delay damages constituted a verdict for Maloney in the amount of $1,293,194.95.

The City filed post trial motions for JNOV and a new trial. The basis for these motions was the trial court's rejection of the City's request for (1) a binding instruction to the jury that the acts alleged and the evidence presented do not fall within the exceptions to immunity in 42 Pa. C. S. §8542; (2) a binding instruction that the evidence showed Maloney's conduct in climbing a scaffolding he knew was not properly secured constituted assumption of the risk; and (3) a charge to the jury to consider assumption of risk as a complete defense to the City's liability. The trial court denied the motion for JNOV but granted the motion for a new trial because it concluded that the doctrine of assumption of the risk was still a viable defense in Pennsylvania and the jury should have been charged on that doctrine.[3]

On appeal to this court, the City contends the trial court abused its discretion because, as a matter of law, based on the undisputed facts of this case (1) the City is immune from suit or, alternatively, (2) Maloney assumed the risk of his injury. In his appeal, Maloney contends the facts of the case establish a cause of action which falls within the real property exception to immunity provided for in 42 Pa. C. S. §8542(b)(3). He further argues that the doctrine of assumption of the risk is not applicable to this case, making it an abuse of discretion for the trial court to have granted the City's motion for a

---

[3] The City also sought to have the verdict reduced to $500,000 pursuant to 42 Pa. C. S. §8553(b). The trial court declined to address that issue because it was granting a new trial.

new trial. For the reasons which follow, we conclude that the City is immune from suit pursuant to 42 Pa. C. S. §8541, and therefore, entitled to JNOV.

Initially, we note that an order denying JNOV is interlocutory and not appealable until reduced to judgment and docketed. Pa. R.A.P. 301. However, the superior court has held that "[w]hen a party to an action moves for judgment n.o.v. and also for a new trial, and the new trial is granted, he is not denied an appeal from the refusal of the judgment n.o.v., which is given independent review." *Buck v. Scott Township,* 325 Pa. Superior Ct. 148, 472 A.2d 691 (1984).[4] The *Buck* case persuades us to hold that an appeal from the denial of JNOV should be permitted. *See* Pa. R.A.P. 105.[5]

Our scope of review of appeals from the refusal to enter JNOV is limited to determining whether the trial court committed an abuse of discretion. *Beechwoods Flying Service v. Al Hamilton Contracting Corp.,* 317 Pa. Superior Ct. 513, 464 A.2d 440 (1983), *aff'd,* 504 Pa. 618, 476 A.2d 350 (1984). JNOV is an extreme remedy and should be entered only in a clear case after the evidence and all reasonable inferences therefrom have been evaluated in the light most favorable to the verdict winner. *Id.*

42 Pa. C. S. §8541 states that "[e]xcept as otherwise provided in this subchapter, no local agency shall be lia-

---

[4] In *Buck,* as in this case, an appeal had been taken from the grant of a new trial (which is an appeal from an interlocutory order allowed as of right pursuant to Pa. R.A.P. 311(a)(5)).

[5] Pa. R.A.P. 105(a) states, in pertinent part:
These rules shall be liberally construed to secure the just, speedy and inexpensive determination of every matter to which they are applicable. In the interest of expediting decision, or for other good cause shown, an appellate court may . . . disregard the requirements or provisions of any of these rules in a particular case . . . on its own motion. . . .

ble for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." As a local agency, *see* 42 Pa. C. S. §8501, the City may not be held liable for any damage resulting from Maloney's injuries unless Maloney has established a cause of action which falls within the requirements of 42 Pa. C. S. §8542.[6] One of these requirements is that "the injury occurs as a result of one of the acts set forth in subsection (b)." 42 Pa. C. S. §8542(a).

Maloney claims that the City's alleged negligence in failing to insure that Contractor properly secured the stringers on the scaffolding is an act which falls within the real property exception to immunity found in 42 Pa. C. S. §8542(b)(3). Section 8542(b)(3) states:

> **Acts which may impose liability.** The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> (3) *Real Property*—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. . . .

The City contends its actions do not fall within this exception for two reasons: (1) the defective scaffolding which caused the injury was not "real property in the possession of the local agency;" and (2) the negligence alleged does not constitute an act "by a local agency or any of its employees within the meaning of Section

---

[6] The three requirements are (1) the damages would be recoverable at common law or a statute creating a cause of action, (2) the injury was caused by negligence, and (3) the negligent acts fall within one of the eight categories in 42 Pa. C. S. §8542(b).

8541(b)(3)." We believe that either of the reasons will support a conclusion that the City is immune to suit in this case, as detailed in the following analysis.

## REAL PROPERTY IN THE POSSESSION OF THE CITY

Maloney argues that since the scaffolding was necessary for the construction of the walls of the tank, which is real property owned by the City, the scaffolding is an "integral part of the tank under construction." He then contends this makes the scaffolding a fixture and qualifies it as real property in the possession of the City.

"A fixture is an article of personal property which, because of its physical annexation of the soil or appurtenance thereto, or because of its essential use in a specific business, has become part of the real estate, in legal contemplation." 16 P.L.E. *Fixtures* §1 (1959). This court has held that if a piece of personalty can be shown to be a fixture, it may be considered as real property for purposes of the real property exception to local government immunity. *McCloskey v. Abington School District*, 101 Pa. Commonwealth Ct. 110, 515 A.2d 642 (1986). In determining whether a piece of personalty has reached this status, this court in *Canon-McMillan School District v. Bioni*, 110 Pa. Commonwealth Ct. 584, 533 A.2d 179 (1987), noted that there are three categories of chattel used in connection with real estate: (1) those which remain personalty because they do not improve and are not peculiarly fitted to the property with which they are used (such as furniture); (2) those which are realty because they are so annexed to the property that removal would result in permanent damage to the chattel or the realty; and (3) those which are annexed in some nonpermanent manner to the realty and are intended by the annexor to be a permanent part of the realty.

To be considered a fixture, a piece of personalty would have to fall within the second or third categories. The scaffolding in question does not fit within either category. There is no dispute that the scaffolding was rented by Contractor, that it was reusable, and that it was not essential to the purpose for which the tank was being constructed. While not what would classically be considered furniture, the scaffolding was not an improvement nor was it "peculiarly fitted to the property" with which it was used. The scaffolding was temporary, needed only by Contractor to build the tanks, and it could be re-used on other projects. The scaffolding is a category one chattel and remains personalty.

## City's Alleged Negligence

Maloney's specific allegations of negligence by the City were:

(a) failing to exercise reasonable care in selecting and employing a competent contractor;

(b) failing to inspect the manner in which the construction work was being performed by contractors;

(c) failing to provide that proper and necessary safety precautions were taken and safety procedures were being followed during the course of the work;

(d) failing to inspect and/or supervise the activities of the contractor at the job site;

(e) failing to require the appropriate safety precautions be taken and safety procedures be followed on the job site when it knew or should have known that a peculiar risk of harm to others would arise during the progress of the work;

(f) allowing workmen on his [sic] site, such as the Plaintiff [Maloney], to work at great height without providing them with appropriate safety equipment;

(g) failing to erect or cause to be erected temporary decking or flooring within the tank aforesaid;

(h) failing to erect or cause to be erected safe or proper scaffolding for the use of workmen on his [sic] job site;

(i) failing to inspect and maintain in good repair the scaffolding erected at the job site for the workmen;

(j) failing to take or cause to be taken necessary and proper precautions to protect the life, limb and persons of individuals in and upon the job site . . . ;

(k) permitting workmen such as the Plaintiff to work under unreasonable hazardous conditions without adequate safeguards;

(l) and in otherwise failing to exercise due and proper care under the circumstances.

Maloney's Complaint in Trespass at 3-4. Maloney contends his allegations, if proven, establish liability on the part of the City for Contractor's failure to properly secure the scaffolding under sections 414,[7] 416[8] and 427[9] of the Restatement (Second) of Torts. These sections deal with liability being imposed upon one who employs an independent contractor for any harm caused by the actions of the independent contractor.

---

[7] Section 414 states:

One who entrusts work to an independent contractor, but who *retains the control of any part of the work,* is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

[8] Section 416 states:

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to

We believe Maloney's allegations and his basis for recovery bring this case within the recent holding of the Pennsylvania Supreme Court in *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987).[10] In *Mascaro*, the Supreme Court stated:

> Acts of the local agency or its employees which make the property unsafe for the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be foreseen to be used, are acts which make the local agency amenable to suit. Acts of *others*, however, are specifically excluded in the general immunity section (42 Pa.C.S. § 8541), and are nowhere discussed in the eight exceptions. On this basis alone, we must conclude that any harm that others cause may not be imputed to the local agency or its employees.

514 Pa. at 362, 523 A.2d at 1124 (emphasis in original).

---

others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

[9] Section 427 states:

One who employs an independent contractor to do work which the employer knows or has reason to know to involve an abnormally dangerous activity, is subject to liability to the same extent as the contractor for physical harm to others caused by the activity.

[10] In *Mascaro*, the harm was caused by a detainee who escaped from the City's Youth Study Center because the City had allegedly been negligent in maintaining the Center. The cause of action was based on the Supreme Court's decision in *Ford v. Jeffries*, 474 Pa. 588, 379 A.2d 111 (1977) where section 365 of the Restatement of Torts (Second) was used to conclude that a property owner could be liable for harm caused by foreseeable criminal conduct as a result of the owner's negligence in maintaining his property.

It is not disputed that it was Contractor's actions which resulted in Maloney's harm.[11] The basis of Maloney's cause of action was the status of Contractor as an independent contractor. There is no allegation that Contractor was an employee of the City. Therefore, the harm caused by Contractor may not be imputed to the City.

## Conclusion

As a matter of law, we conclude that the undisputed facts of this case fail to bring it within the real property exception to local government immunity found in 42 Pa. C. S. §8542(b)(3). Therefore, the trial court erred in failing to grant the City's motion for JNOV on the basis that the city is immune from suit pursuant to 42 Pa. C. S. §8541. Because of our resolution of the immunity issue we do not reach the assumption of the risk issue.

Accordingly, the order of the trial court denying the City's motion for JNOV is reversed and the case remanded for entry of JNOV and the order of the trial court granting a new trial is reversed.

### Order in 2684 C.D. 1986

And Now, December 15, 1987, the order of the Court of Common Pleas of Philadelphia County granting a new trial is vacated.

### Order in 2687 C.D. 1986

And Now, December 15, 1987, the order of the Court of Common Pleas of Philadelphia County denying JNOV is reversed and the case remanded for entry of judgment notwithstanding the verdict in favor of the City of Philadelphia.

Judge Colins dissents.

---

[11] *See supra* note 2.

DISSENTING OPINION BY JUDGE COLINS:

I dissent. I believe that under the unique facts of this case, there was sufficient evidence in the record for the trier of fact to conclude that the scaffolding in question qualified as a fixture and, therefore, could properly have been considered real estate for purposes of the Political Subdivision Tort Claims Act.